## ENMAL GARLAS v. THE STATE.

### No. 3074. Decided June 21, 1905.

**1.—Seduction—Charge of Court—Accomplice's Testimony.**

In a prosecution for seduction a charge of the court which assumed that an accomplice (the prosecutrix) had told the truth, and that all that was required was that she should be corroborated is a charge on the weight of the testimony and reversible error.

**2.—Same—Insufficient Evidence—Chaste Woman—Promise of Marriage.**

On a trial for seduction where the evidence showed that the promise of marriage, if it occurred at all, appears to have been but a slight inducement to the act of copulation and does not show that prosecutrix was a chaste woman, that she loved appellant or reposed confidence in him, etc., but that she consented to have carnal intercourse as soon as it was proposed by defendant, the same is insufficient to sustain a conviction for seduction. Following Spenrath v. State, 48 S. W. Rep., 102; Pete Gorzell v. State, 43 Texas Crim. Rep., 82; 2 Texas Ct. Rep., 670.

Appeal from the District Court of Tom Green. Tried below before Hon. J. W. Timmins.

Appeal from a conviction of seduction; penalty, four years imprisonment in the penitentiary.

The opinion states the case.

*R. E. Taylor* and *J. C. Simmons,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of seduction, and his punishment assessed at confinement in the penitentiary for a term of four years; hence this appeal.

The facts briefly stated show that appellant was a farmer living in Tom Green County, near Fred Hoenghaus, the father of prosecutrix, a farmer in the same neighborhood. Appellant at the time was a widower with three small children. Prosecutrix, a girl of nineteen years of age, at the time was living in Ballinger, some fifteen or twenty miles distant. Appellant on the day before the alleged seduction, went over to where Hoenghaus was at work. The latter asked him if he did not want to marry. Appellant told him he would if he could find a good woman. Hoenghaus told him he had a mighty good girl, and he need not be ashamed if he wanted his girl, just to ask for her. Appellant asked where his girl was, and he told him she was in Ballinger at work; that if he wanted to marry his daughter he would have to see his wife about the matter, and if she was willing he could go to Ballinger and bring her home, but he did not have the money to pay her railroad fare back to Ballinger. Defendant told him that was all right, to go and bring her home, and that he would furnish the money to pay her fare back, and that if she suited him he

would marry her. On the next morning, Hoenghaus and his wife went in the wagon to Ballinger, for their daughter Lissie. They told her of appellant's proposition, and she agreed to it, and accompanied them home from Ballinger on the same day. When they arrived at home appellant was either there or came shortly afterwards. After supper, Lissie and defendant went in the room, adjoining Hoenghaus and wife, and Hoenghaus relates that he heard the cot creak in the room after they had been in there a little time; and that directly the parties left the room, and went outdoors, and did not return until about two o'clock in the morning. Prosecutrix here takes up the story, and she relates that before supper, while appellant and she were in the room together, appellant said to her. "I wish you would be my wife," and she replied, "I wish the same." When they went into supper he said to prosecutrix, "Now we are engaged." After supper we went out into the yard, and talked a while where her father and mother were. They then went back into the house, and sat down on a lounge. Appellant asked her to take a walk with him. They got up, went out of the house, about 10 o'clock, walked about three hundred yards from the house, and sat down on a rock. After they had been sitting there a short time, defendant asked her if she would give him some. She told him she did not want to. They then got up and walked about thirty or forty yards further, and he again asked her and begged her for about five minutes to let him have some. She then submitted. They then waited about five minutes, and he did it to her again. Twice was all that he did it to her that night. Defendant said nothing to her about wanting to marry her that night, except as above related. She further states that she would not have permitted him to do it to her if he had not told her at the house that he wished she would be his wife, and she had agreed to be his wife; that defendant is the father of the baby, she then held in her arms; that after they got up from where they were having intercourse and started back to the house, defendant gave her 50 cents to pay her railroad fare back to Ballinger. On cross-examination she stated that she had only known defendant two or three hours before she had intercourse with him. Never met him before that evening; that when he first proposed to copulate with her, she told him she would rather wait until they were married, but he insisted on having intercourse with her then; that they were engaged, and that was all he said to her, before she submitted to him. This is substantially the State's case.

Appellant relates the matter about as follows: He tells how prosecutrix's parents went to Ballinger for her about as the State's witnesses testified. He says: "I did not tell Mr. Hoenghaus I would give her 50 cents to pay her railroad fare back to Ballinger, if she did not suit me"; that on the evening of the day they brought her back from Ballinger he went over and met the girl. They stood in the door awhile, and then went into supper. After supper, they went

back in the house and sat down on a little single lounge. Soon after they sat down, he said, "I guess you know what I came for;" and she said, "Yes, my father told me." I then put my arm around her, and began to feel her; felt all over her, and she did not raise any objections. He then asked her if she would take a walk with him and she said she would. We walked away from the house about two hundred and fifty yards, and sat down. He asked her if she would give him some. She at first did not say whether she would or not. He then proposed to walk a little farther, and he asked her again, if she would copulate with him. She said, yes; that he might if he would do it to her standing up; that he tried it, and told her she had been tampered with; that they could not do anything that way. She then told him that Fritz Schlakey was the only fellow that had ever done it to her, but that he had. He then told her to lay down, and she pulled off her drawers and lay down, and he copulated with her. He had no trouble in penetrating her; she did not complain of it hurting her. Saw her unbutton her drawers on the side, and took them off. We waited awhile, and I done it to her again, and then we went on back to the house and I went home. That he did not promise her at any time that he would marry her. All that he said to her about marrying was, "I guess you know what I came for," and she said, that her father had told her. That it was a fact that he intended to marry her, and would have done so, had she not told him that Fritz Schlakey had done it to her, and if he had not heard so much about her character. This is a sufficient statement of the case in order to discuss the assignments.

Appellant excepted to the charge given by the court on accomplice testimony, on the ground that the same is upon the weight of the testimony. Said charge is as follows: "You are further instructed that you cannot find a verdict of guilty in this case upon the testimony of Lissie Hoenghaus unless the same is corroborated by other testimony tending to connect defendant with the offense committed, and it is necessary that said witness be corroborated both as to the promise of marriage and as to the fact (if such is a fact) that defendant had carnel intercourse with said witness." This charge is on the weight of the testimony in assuming that prosecutrix had told the truth, and that all that was required was that she sould be corroborated. This charge has often been condemned. Parks v. State, 11 Texas Ct. Rep., 190; Crenshaw v. State, 12 Texas Ct. Rep., 758, and authorities there are cited.

The appellant's counsel in their brief discuss a number of assignments of error, both as to admission and rejection of testimony, and as to the failure of the court to give certain special requested instructions. Some of these assignments are well taken, but in the view we take of this case, it is not necessary here to discuss them as we believe the case should be reversed because of the insufficiency of the testimony to sustain the verdict.

The facts here, to our minds, do not show that prosecutrix was a chaste woman. It is an essential requisite that she be such, as only a chaste woman can be led from the path of virtue. The promise of marriage, if it occurred at all, appears to have been but a slight inducement to the act of copulation. Prosecutrix does not say that she loved appellant, or that she reposed confidence in him on account of the affection existing between them, but almost as soon as the proposition is made to have carnal intercourse, she consented. There is no testimony whatever on her part that she experienced any pain or suffered any injury, such as a maiden would from an act of copulation. On the contrary she makes no complaint whatever. Appellant himself, while admitting the two acts of copulation, states that he had no difficulty in penetrating her; that he knew she had been penetrated by some man before. If the testimony here presented would authorize a conviction, it occurs to us that any person with a formal promise to marry could be convicted for copulating with a mere bawd. The facts here come within the rule laid down by this court in Spenrath v. State, 48 S. W. Rep., 102; Peter Gorzell v. State, 43 Texas Crim. Rep., 82; 2 Texas Ct. Rep., 670. Because in our opinion, the charge of the court was incorrect, and the evidence does not sustain the verdict, the judgment is reversed and the cause remanded.

*Reversed and remanded.*