### EWING SNELLING v. THE STATE.

### No. 250.   Decided December 8, 1909.

**1.—Theft from the Person—Charge of Court—Accomplice's Testimony.**

Upon trial of theft from the person, where the court's charge upon accomplice's testimony was contrary to the precedents laid down by the Court of Criminal Appeals, the case must be reversed.

**2.—Same—Charge of Court—Accomplice—Assuming Facts.**

Where, upon trial of theft from the person, the evidence was not clear as to whether a State's witness was an accomplice, the court should have submitted this issue to the jury. It is only where the evidence is clear in such cases that the court may assume that a witness was an accomplice.

**3.—Same—Evidence—Declaration of Third Parties—Conspiracy.**

Upon trial for theft from the person, it was error to admit in evidence the conversation between defendant and a·third party as to paying the latter some money, some time after it was shown that, if any conspiracy existed between the two to commit the theft and divide the spoils, it had long since ceased.

**4.—Same—Description of Money—Variance.**

Upon trial of theft from the person, where the money described in the indictment alleged that it was good and lawful money of the United States, and the evidence simply showed ten and five-dollar bills, without showing the character of same, the variance was fatal.

Appeal from the District Court of Palo Pinto. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. B. Ritchie, Wayne H. Lasiter, F. C. Highsmith, Penix & Eberhart,* for appellant.—On question of court's charge in assuming that a State's witness was an accomplice: Cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft from the person, his punishment being assessed at two years confinement in the penitentiary.

1. The indictment charges appellant with having stolen a pocketbook and thirty dollars in money, said money being then and there good and lawful money of the United States, and with the intent then and there on the part of him, the said Ewing Snelling to deprive the said Key Duncan of the value of same, etc. The evidence does not show that appellant stole the pocketbook, nor is there anything to justify the charge of the court submitting that issue to the jury. In fact, the testimony of the alleged owner shows that he had two pocketbooks before the supposed theft, and when he awoke from his drunken stupor he still had the two pocketbooks. The court

authorized a conviction for the theft of the pocketbook. This was error. This matter is properly presented for revision. The evidence shows that if the alleged owner lost any money it was a ten dollar bill and two five dollar bills, and the testimony so describes them. No witness swore further than that the alleged owner had a ten dollar bill and two five dollar bills of money of the United States and there is no evidence in the record showing the character of the money further than as stated. It was not shown to be paper money of any character issued by the United States government or under its authority. We call attention to this so that upon another trial the testimony should support the allegations in the indictment. This exact question was decided in the case of Early v. State, 56 Texas Crim. Rep., 61, 118 S. W. Rep., 1036. The evidence, therefore, did not meet the requirements of the law.

2. Charging the law of accomplice, the court gave the following: "You are instructed, gentlemen, that a conviction can not be had upon the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense." Then follows a definition of the term "accomplice" which is unnecessary to repeat. Applying the law to the case, the court gave the following: "Now, I charge you, that the witness Erby Russell is an accomplice, and that a conviction can not be had upon the testimony of the said Erby Russell unless corroborated by other evidence tending to connect the defendant with the offense committed, and the corroboration is not sufficient if it merely shows the commission of the offense." Several objections are urged to this charge, which are well taken. This form of charge has been so frequently discussed and condemned that it would seem to be a work of supererogation to further discuss it. In support of the statement that the charge is error we cite the following authorities: Frugar v. State, 56 Texas Crim. Rep., 393, 120 S. W. Rep., 197; Maples v. State, 119 S. W. Rep., 105; Early v. State, 56 Texas Crim. Rep., 61, 118 S. W. Rep., 1036; Barrett v. State, 55 Texas Crim. Rep., 182, 115 S. W. Rep., 1187; Reagan v. State, 49 Texas Crim. Rep., 443, 93 S. W. Rep., 733; Dixon v. State, 90 S. W. Rep., 878; Barton v. State, 49 Texas Crim. Rep., 121, 90 S. W. Rep., 877; Washington v. State, 47 Texas Crim. Rep., 131, 82 S. W. Rep., 653; Hart v. State, 47 Texas Crim. Rep., 156, 82 S. W. Rep., 652; Garlas v. State, 48 Texas Crim. Rep., 449, 88 S. W. Rep., 345; Jones v. State, 44 Texas Crim. Rep., 557, 72 S. W. Rep., 845; Bell v. State, 39 Texas Crim. Rep., 677, 47 S. W. Rep., 1010. In view of another trial we would further state, in regard to this charge, that the court should not assume that Russell, under the facts, was an accomplice. The evidence is far short of being cogent that Russell or the appel-

lant either took the money. While there are some circumstances which would justify the charge, still there is not sufficient evidence for the court to assume and instruct the jury that Russell was an accomplice. If the evidence was clear that he was, or it was conceded to be a fact, or that the facts necessarily made him an accomplice by participating in the theft, then the court would be correct in charging that he was an accomplice. But, under the circumstances, the jury may have been led to believe, and doubtless did believe, that Erby Russell did commit the offense of theft from the person, when it was a serious question whether he did or not. It was a case purely of circumstantial evidence. So, upon another trial the court should leave that as a question of fact to be decided by the jury instead of assuming it as proved and so instructing the jury.

3. While the witness Merrett was on the stand he was permitted to testify that he was working in the Ideal Cafe at Mineral Wells on the night of the alleged theft; that about 3 o'clock, in the morning of the night in question appellant and Seth Martin came into the restaurant, and were sitting at the lunch counter for some time; that "Martin took out some paper money and silver, there being several bills in paper money. He counted out some of the money, and laid it on the counter to the defendant. Defendant said he would not have it, and Martin then told him he had as well take it, and that it was all he would get. They quarrelled, and Martin said something about beating him, and further that 'I skin people out of their money, and I have given you more money than you ever made.' He said, 'That is all I am going to let you have, and you had as well not ask for any more.' Defendant then said, 'No, by God, I will not take it,' and then they got to quarrelling, and afterwards went out." Several objections were urged to this testimony, among other things, that it was not res gestae nor explanatory thereof, was incompetent, irrelevant and immaterial; and that it was not shown to have any connection with the alleged taking of the money from Key Duncan, and did not and does not tend in any way to elucidate or illustrate any issue in this case; and because as a circumstance said conversation and acts of the defendant and the said Seth Martin, if any, were too remote and were not shown to have any connection with or bear any relation to any issue in the case; and because said testimony was sought by the State for no other purpose than to prejudice the minds of the jurors against appellant. The court qualifies the bill as follows: "Approved with the explanation that this conduct and conversation between the defendant and his co-defendant, Seth Martin, took place within about three hours after the alleged offense was committed, and on the same night the same was committed, and inasmuch as the State's case was one of circumstantial evidence the court believes it proper to admit the facts that the defendant and Martin were still together at this late hour of the

night, or early in the morning, and that they were in possession of money, quarrelling over a division of same as shown in the bill, simply as a circumstance to be considered by the jury along with all the other circumstances in the case." As this bill shows, and as the evidence shows, if Duncan's money was taken from him, it was done in the saloon about 11 or 11:30 o'clock. The State introduced evidence that Duncan dropped his pocketbook upon the floor of the saloon, which was brilliantly lighted—as the witnesses say, brighter than daylight. It is stated also that this pocketbook was picked up by one of the crowd present and put in the lefthand pocket of Duncan's jumper. No one was seen to take the money or pocketbook from his pocket, but immediately after this occurrence appellant, Martin and another party went out of the back door of the saloon. There is evidence also to the effect that after they went out of the saloon appellant gave one of the two parties who accompanied him five dollars, with the remark that there was 30 or 35 cents more coming to him. If this was true, and this was the State's case, then the transaction had ended. The division of the spoils had occurred if they had taken the money from Duncan. This evidence is stated in view of the law, as we understand it, to the effect that where a robbery or a crime is committed in pursuance of a conspiracy or by parties acting together, that the conspiracy or acting together will continue until the proceeds of the crime have been divided, or the contemplated design has been accomplished. Under this rule of law any evidence in regard to their acting together would be legitimate until the end of the conspiracy had been accomplished, such, for instance, as the division of the spoils in a robbery or theft case or where the parties or either had possession of the fruits of the crime. We are, therefore, of opinion that, under the circumstances of this case, there was a want of connection between the case as relied upon by the State and the conversation occurring between appellant and Martin at the Ideal Cafe. This may or may not have been connected with the theft of Duncan's money, if in fact it was stolen, but being several hours subsequent to the transaction, in order to make this testimony legitimate, there must have been something to show a connection between the conversation and the money offered appellant by Martin and rejected by him, and the theft itself. Of course, if this was money taken from Duncan, and this was an attempted division of the proceeds, it would be legitimate evidence to go to the jury as a circumstance for what it is worth. But it will be noted that appellant declined to have anything to do with it, rejected the money, and said, "No, by God, I will not take it." As the matter is presented we are of opinion this bill of exception is well taken.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*