## J. N. BALLARD v. THE STATE.

### No. 2548.   Decided June 27, 1913.

### Rehearing denied October 22, 1913.

1.—Theft of Cattle—Circumstantial Evidence—Charge of Court—Article 743—Alibi.

Where the court's failure to charge on circumstantial evidence was not such error as was calculated to injure the rights of the defendant, the case will not be reversed under article 743, Code Criminal Procedure, as the omission of such charge, in the light of the court's charge on alibi and other portions of his charge, did not present reversible error. Davidson, Presiding Judge, dissenting.

2.—Same—Court's Failure to Charge on Circumstantial Evidence Not Error.

Where, upon trial of theft of cattle, the taking of the alleged property, the driving of the animal from the owner's pasture and that it was butchered; that the hide corresponded with the animal taken; that defendant and another were seen with beef in his hack, etc., was all shown by positive testimony, the

court's failure to charge on circumstantial evidence was not reversible error. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Motley. Tried below before the the Hon. Jo. A. P. Dickson.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary

The opinion states the case.

*Dalton & Russell* and *W. F. Ramsey* and *C. L. Black,* for appellant.— Cited cases in minority opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was convicted of theft of cattle, and prosecutes this appeal.

On the trial his defense was an alibi, and that issue was submitted to the jury in a way that appellant does not complain. The only contention he makes on appeal is that the court erred in failing to charge on circumstantial evidence. On the trial of the case he asked no charge on circumstantial evidence, but did request three other special charges, his first complaint of the failure of the court to so charge the jury, being made in his motion for new trial, and that is the sole ground in the motion. However, under the law at the time of this trial, appellant had a right to complain in the motion for new trial of any omission in the charge or failure to charge all the law applicable to the case, and if the error was such as was calculated to injure the rights of the defendant, we should reverse the case, but in the absence of any requested charge, if the omission in the charge was such as that it was only not calculated to injure his rights, but in fact no injury could occur by reason thereof, then, under the plain letter of the law, we would have no right to reverse. (Art. 743.) So, if by any construction of the testimony, it should be held that a charge on circumstantial evidence should have been given, yet under the charge of the court as given, such omission would not present reversible error. In addition to relying on his plea of guilty, appellant made a definite, specific defense,—an alibi. That was presented to the jury in a manner frequently approved by this court, and the correctness of such charge is not questioned by appellant. They were required to find such defense untrue beyond a reasonable doubt, or they were instructed to acquit him. And were instructed that before they would be authorized to convict, they must find beyond a reasonable doubt that appellant fraudulently took from the possession of J. M. Jackson one head of cattle, with the intent to deprive the owner of the value thereof and with the intent to appropriate same to his own use and benefit before they would be authorized to convict him.

Again, appellant testified that John Law had some cattle running in an adjoining pasture, and while no testimony was offered that any of

Law's cattle had ever gotten in the Matador pasture (the pasture out of which the calf was taken), yet the court instructed the jury:

"If you find and believe from the evidence that the one head of cattle alleged to have been stolen in the indictment in this case was the property of John Law, or if you have a reasonable doubt as to this you will find the defendant not guilty."

So we would hold, as before stated, if by any construction of the testimony, it could be held that a charge on circumstantial evidence would have been appropriate, yet the failure to so charge would not present reversible error, for every defensive theory was affirmatively presented, and the jury instructed that they must find that he took Jackson's cattle, beyond a reasonable doubt, or he would not be guilty.

But we do not think a charge on circumstantial evidence was called for under the evidence; however, as our Presiding Judge is of the contrary opinion, and while it may make this opinion rather lengthy, yet we have decided to state a brief synopsis of the testimony. John Southworth testified the Matador Cattle Company sent him to the pasture to keep a watch for cattle thieves; that in this pasture was a hill, and on Saturday evening, March 16th, he staked his horse under the hill and climbed to the top of the hill, which gave him a view of the surrounding country; that he had a pair of field glasses, and late Saturday evening he saw appellant and John Law ride up, pull the staples out of the fence and enter the pasture of the Matador Cattle Company; that they separated a yearling calf from the remainder of a bunch of cattle, roped it and drove it out of the Matador pasture and into appellant's pasture; that they drove it to a certain point in a canyon where they seemed to again rope it. He then left the hill, notified the employes of the Matador Company, instructing them where to meet him, and the sheriff, and then went after the sheriff, returned and carried the sheriff to the point where he claimed he saw appellant and Law rope the calf in the Matador pasture. Tucker, Shaw and Lair joined them at this point, and they traced the calf's tracks and horse tracks to the point in the fence where the horses and calf had gone from the Matador pasture into the Ballard pasture, and he says appellant and Law were coming up out of the canyon where he had seen them drive the calf the evening before; that appellant was riding a horse and Law was driving a hack; the testimony shows this hack belonged to appellant; he says appellant and Law, as they came out of the canyon, separated, and he and the sheriff went after them, while the others went to the place where he had seen them drive the yearling calf the evening before. Those who went to this point say they "found the head and paunch. This beef was not quite a year old. We found the hide. It corresponded all right with the animal," Southworth says, he "had seen them driving the day before. We found a hide and head and five feet there. The fifth foot was older than the other feet. Four of the feet correspond all right with the hide. The head corresponded all right. The right flank and the right hind leg of the hide was cut off, and part of the right neck was cut off, and the

tail was cut off. The Matador Land and Cattle Company's cattle have a brand on the thigh and on the neck. It is 'V' right low down on the thigh. There is a tally mark on the neck. It would have been '1' on that calf. The right hind leg was cut off. That is the part that the 'V' was on. The right side of the neck was cut off, that is, the part of the neck that had the brand on it. We never found those two parts, though we searched for them. It was fresh, paunch, feet, head and hide, not more than twelve or fifteen hours since it was killed. It was still warm. The blood on the ground was just beginning to cake a little. . . . There were no ears on there, they had cut the ears off, we searched for the ears and found one. The right ear. The mark of the Matador Land and Cattle Company is crop the right. The ear we found showed crop the right. It was cut in two pieces. We never found the other ear."

It is shown by the record that at the point where Southworth says he saw them drive a yearling out of the Matador pasture to, they found one butchered; that the hide corresponded with the hide of the one appellant and Law drove out of the Matador pasture; that the ears were cut off, but they found an ear near by that fitted the hide; this ear was in the Matador mark; that the points on the hide where the Matador brands were had been cut out of the hide, and the hide cut at no other point. All these facts are shown by the testimony of Tucker, Shaw, Lair in addition to Southworth's testimony. The sheriff says when he overtook Ballard he told him he had a beef paunch down there and wanted some explanation of it, when Ballard replied: "If you have it you had better stay with it." The sheriff says he then told appellant he would just take him, when appellant reached for his Winchester rifle. He then offered no other or further explanation. When Law was overtaken in appellant's hack he had a fresh beef in the hack covered with tow sacks. Many other incriminating facts are shown by the testimony in the record, but we do not deem it necessary to go further into detail. A taking is shown by positive testimony; it is shown by positive testimony that an animal was driven from the Matador pasture to a point in the canyon; it is shown by positive testimony that an animal was butchered at this point; it is shown by positive testimony that the hide of this animal corresponded with the animal taken by appellant and Law out of the Matador pasture; it is shown by positive testimony that this animal was marked in the Matador mark; the brand (if branded) having been cut out; it is shown by positive testimony that appellant and Law were seen to come from this point of the canyon with a beef in their hack. It is also shown by several witnesses that a calf of a Matador cow was missing on Monday morning; the cow ranging at the point where appellant and Law were seen to rope and drive this yearling out of the Matador pasture.

We do not think that under any construction of law this case can be said to be one depending wholly upon circumstantial evidence, especially in the light of this record where there is no testimony that appellant or

Law ever had a head of cattle in the Matador pasture, or right to take one out of the Matador pasture. We have read the brief filed by the able counsel for appellant and the cases therein cited, but by reading them it will be seen that the facts in those cases are not similar to the facts in this and the Law case. With the rules of law as announced in those cases we concur, but the facts in this case do not bring the case within those rules. For a long citation of authorities so holding, see Branch's Criminal Law, section 203, and especially the last paragraph in this section.

The judgment is affirmed.

*Affirmed.*

PRENDERGAST, Judge.—I concur.

DAVIDSON, Presiding Judge (dissenting).—Appellant was charged with stealing an animal the property of J. M. Jackson.

This is a companion case to the case of Law v. State, as to the taking of the animal and the attendant circumstances testified to by the witness Southworth, and the facts are in substance the same. My brethren affirm both cases. I can not concur with their conclusion.

In this case, however, appellant proved by quite a number of witnesses, among them county officers, that he was in the county seat of the county at the time Southworth says the animal was taken and was not present and had no connection with its taking. Under the testimony introduced by the defendant of the officers and other witnesses, including his wife and himself, it was a matter of impossibility that appellant was connected with the taking of the animal about which Southworth testifies. Southworth did not undertake to identify the animal at the time the two men drove it out of the Matador pasture. He simply states he saw them drive a yearling, which the State undertook to show subsequently was the calf of a cow of the Matador Company. If Southworth had testified positively to the identity of the animal taken by these parties, the State's contention would doubtless be correct, but he did not so testify. I do not care to write further myself in regard to it inasmuch as Messrs. Dalton & Russell and Hon. W. F. Ramsey have filed an able supplemental argument covering the case, and I think they are correct. The argument shows great research of the law and accuracy of conclusion, and I believe correctly presents the law of the case. I, therefore, adopt it is my dissenting opinion in the case. Their argument is as follows:

"Among the things that we think may be considered as settled is that, in every case depending solely on circumstantial evidence, the court must give such charge and a failure so to do will, if the matter is complained of in motion for new trial, be good ground for reversal. That proposition is as settled and as thoroughly established in the law of this State as the position of the North star is fixed in the heavens. Assuming this to be the rule, let us then see whether the court should have charged on circumstantial evidence in the case. The theory and con-

tention of the State is in this wise: Counsel say that appellant was seen driving the yearling in question from the pasture of the Matador Land and Cattle Company, and that the other proof but tended to fix ownership, and, therefore, the case is not one of circumstantial evidence. The fallacy of this reasoning is that it assumes that there was proof of the *identity* of the animal in question by the witness Southworth and that his testimony was to the effect, in substance, that *the animal in question* was taken from the Matador pasture. Of course, if that were true, we would concede that the case was not one of circumstantial evidence, but the fact is that the testimony of Southworth went only to the extent that *some* yearling was driven by appellant and Law from the pasture in question. He was fair enough to state, however, as the court will remember, that the yearling that he saw driven was just like any other yearling raised in that county, with no distinctive marks or nothing to identify it, and there was nothing in his testimony that raises the issue and question as to identity at all or even as to ownership, except the circumstance that a yearling was driven from the Matador Land and Cattle Company pasture. This was, of course, a circumstance of value and importance, but it was only a circumstance, since the witness testified that not infrequently cattle belonging to one person would stray into the pasture of another. So that the argument destroys itself. The court must remember that appellant was charged with the theft of a *certain head of cattle, the property of the person named in the indictment,* and, therefore, before it can be said that the testimony is positive there must be positive proof of the identity and ownership of the animal alleged to have been stolen. Since the argument before the bar of this court, we have examined all the cases which counsel for the State alluded to in oral argument, as well as those endorsed on the wrapper. It is our purpose to review these authorities in the light of the record, and also call attention to other cases not referred to in our original brief, some of which, we think, we shall be able to demonstrate, absolutely and conclusively, that we are correct in our position.

"The first case referred to by counsel in oral argument was that of Rogers v. State, 38 S. W. Rep., 184. The syllabus pretty well states what is held in that case, which is as follows: 'Where, in a prosecution for cattle theft, the taking is shown by positive testimony, a charge on circumstantial evidence is not necessary.' In the course of the opinion, Judge Davidson, who wrote for the court, said: 'The facts adduced on the trial show beyond any controversy that defendant killed *the animal in question.* This he admitted to the State's witnesses and this he proved himself by his own witnesses, and there is no question of the fact that he was connected with the killing of the animal.' The other facts stated in the opinion demonstrate conclusively that this was not a case of circumstantial evidence.

"The next case argued by counsel is that of Nixon v. State, 93 S. W. Rep., 555. The third subdivision of the syllabus states the rule in that case as follows: 'In a prosecution for theft, where the taking is proved

by positive testimony and the intent and other circumstances are proved
by circumstantial evidence, the court need not charge on circumstantial
evidence.' And the rule is thus stated more fully by Judge Henderson:
'Appellant claims that the court committed an error in not charging on
circumstantial evidence, insisting that, while the *taking* may have been
proved by *positive testimony* of the want of consent of the owner as well
as the intent of appellant was proved by circumstances.' This sentence
is so vague. as to be almost unintelligible, but in the second sentence
thereafter the true rule is stated, which is as follows: 'But where the
main fact as in theft, the *taking,* is proved by positive testimony and
the intent and other circumstances of the case are proved by circum-
stantial evidence, the court is not required to charge on circumstantial
evidence.' We gather from the somewhat meager and obscure state-
ment in the opinion that, in that case, the theft, that is, the taking, of
the animal in question, was proven by direct evidence and that the intent
was shown by circumstantial evidence. Of course, in such case, it is
well settled that the court is not required to charge on circumstantial
evidence, and this was distinctly recognized by us in our original brief
as well as in the argument of the case at the bar of this court.

"The only other case referred to by counsel in argument was that of
Taylor v. State, 62 Texas Crim. Rep., 611, 138 S. W. Rep., 615. That
is quite a long case, but it no more sustains the position of the State
than the other cases to which we have called attention. The syllabus,
we think, fairly states all that is held in that case. In the eleventh
paragraph of the head-notes, the rule is thus stated: 'It is not neces-
sary to instruct on circumstantial evidence in a trial for cattle theft
where the accused admitted taking *the cow* from her range and selling
her, relying on a claimed purchase from a third person.' In other
words, this states the familiar rule that, where the taking of the animal
in question is proven by direct testimony, or is admitted by the defend-
ant and his defense raised the question of taking in good faith or lack
of felonious intent, in such case the court is not required to charge on
circumstantial evidence.

"The cases cited on the wrapper are those of Hayes v. State, 30 Texas
Crim. App., 404; Dobbs v. State, 51 Texas Crim. Rep., 629, at page 633;
and Rogers v. State, 36 Texas Crim. Rep., 563, which is the same case
reported in 38 S. W. Rep., supra.

"Now, let us examine the Hayes case, 30 Texas Crim. App., supra.
The syllabus, subdivision 2, fairly well states the rule in that case, and
is thus stated by the Reporter, Judge Willson: '*The* stolen animal,
while running in its accustomed range, strayed into appellant's pasture,
the fence of which was not cattle proof. Defendant knew the animal
and also the brand. After the animal had been in his pasture about
three months, it was driven up with other cattle defendant intended to
ship and placed in his pen. The next morning, one G., who stayed at
defendant's house the night before and was a stranger in the community,
went to the pen with defendant, sold the cattle to him for $37, executed

a bill of sale for same, and changed the marks and brands of same so as to obliterate the old ones.   Held, that the court will not presume that there had been a previous taking by either of the parties and that the conviction did not depend wholly upon circumstantial evidence, and that the court did not err in refusing to charge the law applicable to such evidence.   We call attention to the fact that it appears in the opinion of the court (page 47) that 'appellant testified to the *taking of the steers at the pen*, but relies upon the purchase from Green to show his innocent connection therewith.   Therefore, it is apparent that this case comes within the principle of the rule that where the fact of the taking of property where theft is charged is admitted or shown by positive testimony, and the question of intent is shown by circumstantial evidence, that the court is not required to charge the law of circumstantial evidence.'

"The next case is that of Dobbs v. State, 51 Texas Crim. Rep., 629, supra.   The decision in that case is controlled by the rule of juxtaposition and has no application to the matter here in controversy.   Besides, in that case the killing was admitted.   In the course of the opinion, page 633, Judge Brooks says: 'The witness walked up the road with another witness and discovered deceased lying on the ground shot, and these facts place appellant in such juxtaposition of the crime of themselves from the State's standpoint as to preclude the issue of circumstantial evidence.   Be this as it may, the defense's testimony shows that appellant and his son participated in the killing.   This alone would remove the case from the realm of circumstantial evidence.   The only remaining issue was motive of appellant in doing the killing.   While his wife testified to a case of self-defense, still it shows the agency of appellant in the killing, and where *the act is established by positive evidence* and the intent with which said act is committed alone is to be ascertained, then the case is removed from the realm of circumstantial evidence, and we accordingly hold that it was not error for the court to refuse a charge on circumstantial evidence.'

"Now, we respectfully submit that it can not be a matter of substantial controversy or dispute that not one of the decisions discussed by counsel at the bar, or cited by the Assistant Attorney-General, are in conflict with our position, but all of them are, when analyzed, in harmony with our position.   Now, then, let us see further the decisions of this court.

"We respectfully submit that the identical question here involved is unequivocal and squarely decided by this court in the case of Smith v. State, 12 S. W Rep., 869.   The opinion in that case is very short and we here copy the whole of it:

" 'The charge of the court was specially excepted to by the defense upon the ground that it did not submit the law with regard to circumstantial evidence.   In explaining the bill of exceptions, the learned judge says: "I did not charge as to circumstantial evidence, because the case did not depend wholly upon that character of evidence."   In this

we differ with the learned judge. We concede that there are very strong proximate circumstances going to show that the red roan cow in Spiller's mark and brand, seen by the witness Bill Wilson when defendant drove and had her put in his field, inside of a week of the time Spiller's cow was missed, searched for, and the beef and hide found at defendant's house was the alleged stolen animal. Still, this witness did not see and identify the hide as of the animal he had seen the defendant drive and have turned into his field. The *identity* of the animal was wholly an inference to be deduced from circumstances. It is unnecessary to discuss other questions, as they will not arise on another trial.'

"Now, let us reason about this case and see if the law as there laid down does not fully sustain our contention. As will be noticed, that case was tried by Judge F. A. Williams, long a member of the Supreme Court of this State. Messrs. Abercrombie & Randolph, among the ablest lawyers who ever lived in Texas, represented Smith. In that case, it was shown that a certain cow was driven and put into the field of appellant, but it is said 'this witness did not see and identify his hide as of the animal he had seen the defendant drive up and have taken into his field. Therefore, the court says the *identity* of the animal was wholly an inference to be deduced from circumstances.' Of course, the facts are not given at any length, but they sufficiently appear to make the question there decided identical with the case here. Now, remember, the charge here was theft of a *certain head of cattle,* the property of the *person named in the* particular count on which the case was submitted. In order for this not to be a case of circumstantial evidence, it should have appeared from the testimony of some witness or the admission of the appellant that this particular animal owned by this particular person had been taken. Is there such evidence? We answer, no. Southworth, in terms, declined to identify the animal driven from the pasture as an animal belonging to the Matador Land and Cattle Company. It is just as indispensable to show ownership in a charge of theft as it is to show the possession or taking and that must be proven by some sort of testimony. How did they seek to establish the fact of the taking of this particular animal? First, by the testimony of Southworth that *some* yearling was taken from the pasture of the Matador Land Company, and later by circumstances showing mutilation of the hide and otherwise that the animal in fact taken was an animal belonging to the Matador Land and Cattle Company, and, therefore, when learned counsel say to us that there is positive testimony of the taking, we say there is indeed positive testimony *some* animal was driven from the pasture, but there is no positive testimony that the *identical animal* belonging to the person named in the indictment was at any time ever so driven, and this can only be established by reference to the facts and circumstances of the case. So that, as we believe, the case of Smith v. State is absolutely in point and thoroughly conclusive of the question in controversy. Of course, on so narrow a point as this, it is difficult to find many authorities directly and precisely in point, and our re-

searches, which have been thorough and exhaustive, can at most supply the court with such analogies as should be helpful. Among the cases which, as we believe, in principle support our contention, is that of Montgomery v. State, 20 S. W. Rep., 926. In that case, the syllabus pretty well states the case, and is as follows: 'On a prosecution for the theft of hogs, defendant's presence about a half mile distant from the scene of the theft with others who stole them and his flight with them when discovered in possession of the hogs, are not such positive evidence of the taking by defendant as will justify the court in omitting to instruct the jury as to the law of circumstantial evidence and defendant is entitled to a reversal on appeal though he failed to object to such failure at the trial.' In that case, the following statement of the facts is made: 'The hogs were taken perhaps half a mile or more from the place at which they were found. Appellant was *present* with others who stole them and when discovered in possession of the hogs ran off with the other persons. If appellant ran because of his guilt, then his flight was a cogent fact against him, but conceding his flight, it was not positive evidence of the taking. It was as consistent with receiving or guilty connection with the transaction after the theft as with the original taking.'

"We call the attention of the court to the case of Pace v. State, 53 S. W. Rep., 689. In that case, it appeared, as the facts are stated by Judge Brooks, that 'John Doyle testified for the State that he knew the defendant and knew F. Burleson, the owner of the yearling alleged to have been stolen; that some time in the early part of 1897 defendant *drove* a black-and-white pied yearling down to where Jim Palmer was living and sold it to Jim Palmer; that he was present and heard the trade between them. There is no positive evidence as to the taking of the animal. The animal was found in possession of appellant eight or ten days after the same was missed from the possession of the owner. Appellant claimed to have won the animal in a game of cards with McBride. Where there is neither a confession by appellant, nor positive proof of the gist of the offense of theft (that is, the fraudulent taking), the case is one resting on circumstantial evidence and it is fundamental error for the court not to charge upon the same.'

"We also call the attention of the court to the case of Roebuck v. State, 51 S. W. Rep., 914. This case is important as being in harmony with the case of Smith v. State, 12 S. W. Rep., supra, in that it holds to the doctrine that, unless the *identity* of the animal alleged to have been stolen is shown by *positive evidence,* a charge on circumstantial evidence must be given. Judge Brooks, speaking for the court, there says: 'The books are replete with endorsements of charges on circumstantial evidence, and it is not necessary for us here to say how the charge should be worded. We do not think the evidence is sufficient on the question of the *identity* of the hog as being the hog of the prosecuting witness. Because the court failed to charge on circumstantial

evidence and because of the lack of sufficient proof of identity as above indicated, the judgment is reversed and the cause remanded.' Now, applying the principle in that case to the case at bar. There was no positive proof in this case of the identity of the animal which Southworth saw appellant drive from the pasture, in respect to ownership or otherwise, as takes the case out of the doctrine of circumstantial evidence, and if the court is to follow the Roebuck and Smith cases, supra, which have not only never been overruled but which are sound in principle, we can see no escape from the proposition that this case must be reversed. It is, too, we may say, a matter of congratulation that the principle of these cases support thoroughly the reasoning of our original brief and our contention and argument at the bar of this court.

"We also call attention and invite the court to read the comparatively recent case of Goode v. State, 56 Texas Crim. Rep., 418, 120 S. W. Rep., 199.

"The case of Felts v. State, 53 Texas Crim. Rep., 148, 108 S. W. Rep., 654, is also authority for the proposition that, if the question of identity of the property stolen is shown by circumstantial evidence, an instruction on such testimony must be given, although in other respects the case is one of positive testimony. In that case, Judge Davidson, speaking for the court, says: 'A charge was also asked with reference to the *identity* of the bills. That is, before they could convict appellant of the theft of the money, the evidence should show that it was the money taken from the person of Hoskinson. It was a case of circumstantial evidence pure and simple and reliance of the State to identify the bills consisted of evidence to the effect that Hoskinson had lost several twenty dollar bills and that appellant or his brother received two twenty dollar bills from Hooten. Of course, if it was the twenty dollar bills taken from the person of Hoskinson and appellant assisted in taking it as a principal, he would be guilty of theft. If not, and he afterwards received, knowing it to be stolen, he would be guilty as a receiver and not as a taker.' Now, while the doctrine of circumstantial evidence, strictly as such, is not discussed in that case, the relevancy of the general principle discussed by Judge Davidson is, we think, by analogy, important.

"There will be found in the books a great many cases where the court has passed on the question as to whether or not a charge on circumstantial evidence should have been given. There can be no difference, of course, among lawyers as to the general rule, and we assume that there can be no difference in this court in respect to the general rule, that is, that where a case is solely one of circumstantial evidence, a charge on that character of testimony must be given. On the contrary, it is held universally that where there is positive evidence, either by a witness, in the shape of a confession, by an accomplice, or by admission of defendant in the course of his testimony of the facts *constituting the offense,* that no charge on circumstantial evidence need be given, although the testimony raised the issue of the lack of fraudulent intent

or other defensive matter. Those cases, of course, do not help us much here. It is equally well settled that, where the case is one merely of circumstantial evidence, an instruction such as we complain of the court not giving in this case must be given. Of course, the difficulty lies in determining whether or not this is a case wholly of circumstantial evidence. We believe, on reason, that if the court will carefully think the matter over, there can be little doubt that this is a case of circumstantial evidence, and we think beyond the peradventure of a doubt that we are abundantly sustained in this contention by the cases of Smith and Roebuck, supra, that, applying the principle of these cases to the case at bar, it must necessarily result in the court sustaining our contention here. We have examined almost every case in our Reports of recent years on the subject in hand. We have not cited all of them, but we have found none, when carefully analyzed, in conflict with the views here expressed.

"The case of Childens v. State, 37 Texas Crim. Rep., 382, is squarely in point and fully sustains our contention. Also see Lindley v. State, 8 Texas Crim. App., 445; Eckert v. State, 9 Texas Crim. App., 105, and Veasly v. State, 85 S. W. Rep., 274. The last case is especially valuable."

The judgment ought to be reversed and the cause remanded.

[Rehearing denied October 22, 1913.—Reporter.]