## Robert Capshaw v. The State.

### No. 3077. Decided April 29, 1914.

**1.—Seduction—Accomplice—Corroboration—Charge of Court.**

Where, at the request of the district attorney, upon trial of seduction, the court charged the jury that the corroborating evidence of an accomplice need not be direct and positive and independent of the testimony of the prosecutrix, but that proof of such facts and circumstances as tend to support her testimony, and which satisfies the jury that she is worthy of credit as to the facts essential to constitute the offense of seduction as hereinafter defined, and it tends to connect the defendant with the commission of the offense charged, will fulfill the requirements of the law, there was no reversible error. Following Beeson v. State, 60 Texas Crim. Rep., 39. Davidson, Judge, dissenting.

**2.—Same—Conduct of District Attorney—Improper Questions.**

Where the bill of exceptions disclosed that the district attorney was aware, at the time he asked defendant the question while on the witness stand whether it was not a fact that he left a certain county because he was indicted for rape, etc., that no such indictment had ever been presented and no arrest had ever been made, the same was reversible error, although the question was answered in the negative. Following Ballard v. State, 71 Texas Crim. Rep., 168, 160 S. W. Rep., 716, and other cases.

**3.—Same—Evidence—Cross-examination.**

Upon trial of seduction, the court should not have permitted the State's attorney on cross-examination of defendant's witness to ask whether or not he had left a certain county because he had carried a pistol, and whether he did not so inform another and show him signs of rust on his clothing where he had carried said pistol, all of which was answered in the negative.

**4.—Same—Evidence—Irrelevant Testimony—Moral Turpitude.**

Upon trial of seduction, it was reversible error to permit the State's witness to testify that the son of the defendant had told him that he had left a certain county because he had to carry a pistol, etc., after the said son denied that he so carried a pistol and that he so told the witness. The carrying of a pistol does not involve legal or moral turpitude, and was wholly immaterial in the instant case, and could only prejudice the defendant, who was the father of the witness whose testimony was attacked.

Appeal from the District Court of Angelina. Tried below before the Hon. L. D. Guinn.

Appeal from a conviction of seduction; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

Vol. 73 Crim.-39.

*Mantooth & Collins* and *W. F. Ramsey* and *C. L. Black,* for appellant.—On question that witness can not be impeached because he was charged with a misdemeanor: Merriwether v. State, 55 Texas Crim. Rep., 438; Brittian v. State, 36 id., 406; Bain v. State, 38 id., 635; Caldwell v. State, 106 S. W. Rep., 343; Goodwin v. State, 58 id., 496.

On question of court's charge on accomplice testimony: Irvine v. State, 20 Texas Crim. App., 12; Bryant v. State, 16 id., 144; Russell v. State, 37 Texas Crim. Rep., 314.

*C. E. Lane,* Assistant Attorney General, for the State.

DAVIDSON, JUDGE.—This conviction was for seduction, the punishment being eight years in the penitentiary.

The court at the request of the district attorney gave the following charge: "You are further charged in connection with the main charge as to Eula Scroggins being an accomplice, and that her testimony must be corroborated by other testimony tending to connect the defendant with the offense charged: That the corroborating evidence need not be direct and positive independent of the testimony of the said Eula Scroggins, but proof of such facts and circumstances as tend to support her testimony, and which satisfy the jury that she is worthy of credit as to the facts essential to constitute the offense of seduction as hereinbefore defined to you (and which tend to connect the defendant with the commission of the offense charged), will fulfill the requirements of the law." Several objections were urged to this charge. Among others that it was on the weight of the evidence as well as its tendency to emphasize and give undue importance to the issue of corroboration and had the effect to lead the jury to believe that in the opinion of the court the witness was sufficiently corroborated. We are of opinion the exceptions to this charge are well taken. First, that it is on the weight of the evidence; and, second, that it emphasizes and gives undue importance to the issue of corroboration and had the effect to lead the jury to believe, as contended by appellant, that the witness was sufficiently corroborated. The rule laid down as to corroboration in the case is not the correct one. Quoting from the charge, we find this language: "The corroborating evidence need not be direct and positive independent of the testimony of said Eula Scroggins, but proof of such facts and circumstances as tend to support her testimony." Under the authorities this rule has been condemned and in recent cases. The usual criterion by which the testimony of an accomplice is to be weighed, valued or corroborated, is that in order to be sufficient the facts and circumstances must corroborate the accomplice, independent of her testimony,—that is, discarding the testimony of the accomplice, if there are no facts and circumstances which tend to show the commission of the offense, or to sustain her testimony which is independent of her testimony, the corroboration is not sufficient. But the court here tells the jury that it is not necessary that it be independent of her testimony. In other words, it may be dependent upon

her testimony. In a certain sense this may be true,—that is, her testimony must be corroborated by the facts and they must so adjust themselves as to in fact corroborate the accomplice as required by the statute, but her testimony, or the testimony dependent upon her testimony, can not be used as corroboration. It must come from an undefiled and outside source and not from the accomplice's testimony. If testimony that was dependent upon her testimony could be used as corroboration, then the statutory rule that her testimony must be corroborated would be set at naught. Without following up this matter, we cite Curry v. State, 68 Texas Crim. Rep., 262, 151 S. W. Rep., 319; Bishop v. State, 68 Texas Crim. Rep., 559, 151 S. W. Rep., 821; Smith v. State, 58 Texas Crim. Rep., 106, 124 S. W. Rep., 919; James v. State, decided at the present term of the court. Also as bearing upon these suggestions of the error in the charge, see Campbell v. State, 57 Texas Crim. Rep., 301; Lemmons v. State, 58 Texas Crim. Rep., 269; Garlas v. State, 48 Texas Crim. Rep., 449. These seem to be a sufficient number of cases to sustain the proposition that the court's charge was error without going further into the case.

Another bill of exceptions recites that the district attorney propounded to the defendant, while he was upon the witness stand the following question: "Is it not a fact that you left Rains County because you were indicted for rape or assault to rape on Zoe Wells and did you not so state or tell Ed. Shofner?" Various objections were urged to this question. The witness answered: "I was not indicted in Rains County for rape or assault to rape on Zoe Wells, nor did I ever tell Ed. Shofner that I was indicted for rape or assault to rape on this girl." The grounds of objection were renewed and the bill of exception reserved. This bill of exceptions is well taken and the court should have sustained the objections. It is stated in the bill of exceptions that the district attorney was aware at the time he asked the question that no such indictments had ever been presented and no arrest had ever been made, or charge, against the appellant and under those circumstances the court should not have permitted the district attorney to ask such questions. The authorities, we think, upon this question are ample. See Ballard v. State, 71 Texas Crim. Rep., 168, 160 S. W. Rep., 716; Branch's Crim. Law, sec. 867; Clements v. State, 69 Texas Crim. Rep., 369, 153 S. W. Rep., 1137. Judge Harper, writing the opinion in the Clements case, says: "In another bill it is claimed that the State asked certain questions to prejudice the jury against witnesses for defendant, the State's attorney knowing at the time that no grounds existed upon which to base such questions." In the case at hand the bill recites the district attorney knew there was nothing upon which to base the question inasmuch as no such things had occurred in Rains County. This was the defendant testifying in the case, and if, as a matter of fact, appellant had been indicted for rape, or assault to rape, it might have been used as a means of impeaching him, or attacking his credibility, but as no such thing occurred, and the district attorney had knowledge of the fact, the court should not

have permitted this question as it was calculated to injure the rights of the defendant before the jury. This sort of testimony should never be permitted to go to the jury when it is known that it did not occur and proof could not be made of the charges for the supposed felonious conduct.

Another bill of exception recites that when the witness C. C. Capshaw was testifying for the defendant, on his cross-examination, he was asked whether or not he had left Rains County because he had carried a pistol, and whether or not said witness had told John Hubbard that he, said witness, had left Rains County because he had to carry a pistol, and whether or not he had shown him signs of rust on his clothing where he had carried the pistol in Rains County? Various objections were urged to this manner of cross-examination of the witness and the witness could not be attacked by showing that he had carried a pistol, even if he had carried one; that it would tend to prejudice the jury against the weight and credibility of the testimony of said witness given in behalf of his son, defendant. The court overruled these objections and permitted him to testify denying that he had made any such statement. The court signs this with the statement that by referring to the statement of facts on this subject and further the witness said that Hubbard would not testify to any such thing. The qualification does not seem to assist in clearing the matter. The fact that Hubbard would not testify to any such thing would have been an urgent reason why the question should not have been permitted, or the answer given. The question was based upon the idea that the witness had stated to John Hubbard that he had carried the pistol. Now, if John Hubbard would deny, as stated by the judge in his qualification that he would do, that he had made such statements, it would have presented to the court a very strong reason why the question should not have been asked, or the answer given. In the first place, the witness could not be attacked by proof that he carried a pistol; and, in the next place, the question shows that the impeachment was to be drawn from Hubbard, and the court qualified the bill by stating Hubbard would not so testify. In view of this, the court should have sustained the objection and excluded the testimony.

Another bill which might be considered in the same connection, was that Hubbard was permitted to testify that the same witness, C. C. Capshaw, had told him that he had left Rains County because he had to carry a pistol, or words to that effect, and that he, Capshaw, had shown him, John Hubbard, his clothing which had rust on them and the rust was the result of carrying a pistol when he was in Rains County. Objection was made to this for various reasons set out in the bill and the court overruled the objections and the witness was permitted to testify that the witness Capshaw had told him, Hubbard, that he, Capshaw, "had to tote a pistol" while he was in Rains County on account of some threats or something of that kind, and he showed him his clothing too, etc. The court qualifies this by referring to the statement of facts and C. C. Capshaw's and Hubbard's evidence on the subject. The statement

of facts shows, in substance, what the bill of exceptions shows,—that Capshaw was a witness for the defendant, who was his son, and the predicate was laid and the question was asked with reference to carrying the pistol, under the circumstances detailed, while in Rains County, and it was denied and Hubbard was placed on the stand to and did contradict him. Under all the authorities this evidence was inadmissible. Carrying·a pistol involved neither legal nor moral turpitude and it was wholly immaterial in this case, and could only go to the prejudice of appellant in attacking his witness, who was his father, and one of his important ·witnesses. We deem it unnecessary to cite cases in support of this.

For the reasons indicated the judgment is reversed and the cause is remanded.

The majority of this court does not believe the quoted charge is erroneous, but comes within the rule laid down in the case of Beeson v. State, 60 Texas Crim. Rep., 39.

*Reversed and remanded.*